# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE ST. JOE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:10-cv-968-LPS |
| | : | |
| TRANSOCEAN OFFSHORE DEEPWATER | : | |
| DRILLING INC., TRANSOCEAN HOLDINGS | : | |
| LLC, TRANSOCEAN DEEPWATER INC., and | : | |
| TRITON ASSET LEASING GMBH, | : | |
| | : | |
| Defendant. | : | |

---

Edmond D. Johnson, Esquire, James G. McMillan, Esquire, and James H. S. Levine, Esquire of Pepper Hamilton LLP, Wilmington, DE
William A. Brewer III, Esquire, Michael J. Collins, Esquire, Kenneth N. Hickox, Jr., Esquire, Robert W. Gifford, Esquire, and James S. Renard, Esquire, of Bickel & Brewer, Dallas, TX

Counsel for Plaintiff.

Andre G. Bouchard, Esquire, and Jeffery M. Gorris, Esquire, of Bouchard Margules & Friedlander, P.A., Wilmington, DE
Champbell E. Wallace, Esquire of Frilot LLC, New Orleans, LA

Counsel for Defendants.

---

## MEMORANDUM OPINION

March 15, 2011
Wilmington, Delaware.

**Stark, District Judge:**

## I. INTRODUCTION

The St. Joe Company ("St. Joe" or "Plaintiff"), a Florida corporation, sued Defendants

Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater, Inc., which are

Delaware corporations, Transocean Holdings LLC, a Delaware limited liability company, and

Triton Asset Leasing GmbH, a Swiss entity with its principal place of business in Texas

(collectively "Transocean" or "Defendants"), in the Delaware Superior Court. Transocean

removed the action to this Court. Presently before the Court is Transocean's Motion to Stay

Proceedings Pending MDL Panel's Transfer Ruling (D.I. 3) and St. Joe's Motion to Remand

(D.I. 5). For the reasons set forth below, the Court will DENY the stay and GRANT the remand.

## II. BACKGROUND

St. Joe filed this action on October 12, 2010 in Delaware Superior Court asserting claims

for negligence, gross negligence, and strict liability pursuant to Florida law. On November 11,

2010, all Defendants removed the action to this Court.

St. Joe had earlier filed two related actions in Delaware Superior Court: one against

Halliburton Energy Services Inc. ("Halliburton"), on August 27, 2010, and another against M-I

LLC ("M-I"), on September 23, 2010. Halliburton and M-I removed their cases to this Court and

both were assigned to another member of this Court.

All three of St. Joe's actions stem from the British Petroleum ("BP") oil spill in the Gulf

of Mexico, which occurred when the "Deepwater Horizon" oil rig exploded on April 20, 2010.

The BP oil spill has spawned hundreds of lawsuits, approximately 400 of which are currently

consolidated in multi-district litigation action number 2179 ("MDL 2179" or "the MDL Action"),

1

entitled *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, pending in the Eastern District of Louisiana ("the MDL Court"). The Halliburton and M-I actions have been assigned to the MDL Court pursuant to a Transfer Order issued by the Joint Panel on Multidistrict Litigation ("JPML") on February 7, 2011.[1]

On November 30, 2010, the JPML issued Conditional Transfer Order No. 7 ("CTO 7"), which conditionally transferred the instant action to MDL 2179 as well. On December 21, 2010, St. Joe filed with the JPML a motion to vacate CTO 7.

In the meantime, on November 18, 2010, Transocean filed a motion to stay the instant action pending the JPML's transfer ruling. (D.I. 3) St. Joe opposed a stay and, in turn, filed a motion to remand on December 2, 2010. (D.I. 5; D.I. 8) On January 6, 2011, Transocean requested oral argument on its motion to stay and St. Joe's motion to remand. (D.I. 13) On the same day, St. Joe requested oral argument on the motion to remand. (D.I. 14) On January 18, 2011, the Court issued an Order scheduling oral argument on the motion to remand for February 10, 2011. (D.I. 15) On February 4, 2011, the Court amended its Order and advised the parties that oral argument would be heard on both the remand and stay motions. (D.I. 18)

After the JPML denied St. Joe's motion to vacate CTO 5 on February 7, 2011, Transocean filed an emergency Motion for Continuance of the Hearing Scheduled for February 10, 2011. (D.I. 20) The Court heard the parties by teleconference on Transocean's emergency motion on February 8, 2011. Finding that granting the motion for continuance would be tantamount to granting the motion to stay, and recognizing that the parties (as well as the Court)

---

[1]These two actions were conditionally transferred to the MDL Action on October 27, 2010, pursuant to Conditional Transfer Order No. 5 ("CTO 5"). St. Joe's motion to vacate CTO 5 was filed on November 17, 2010 and denied on February 7, 2011.

had expended substantial resources preparing for a hearing that was only days away – and which Transocean had requested – the Court denied the motion for continuance. The Court heard argument on the motion to stay and motion to remand on February 10, 2011. *See* Transcript (D.I. 28) ("Tr.").

## III. LEGAL STANDARDS

Whether or not to stay litigation is a matter committed to the discretion of the district court as part of its inherent power to conserve judicial resources by controlling its docket. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This is true even in the context of an action that may, in the absence of a stay, eventually be transferred into an MDL action. *See Benge v. Eli Lilly & Co.*, 553 F. Supp. 2d 1049, 1050 (N.D. Ind. 2008) ("The decision to issue a stay of proceedings when a party submits a motion for transfer to an MDL panel rests within the court's discretion.").

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for any district . . . where such action is pending." Among other things, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

After a defendant removes a state case to federal court, the plaintiff may file a motion to remand, and the district court must remand if there is no federal jurisdiction or if there is a defect in the removal procedure. *See* 28 U.S.C. § 1447©). The authority to remand a removed case survives a JPML conditional transfer order. *See Rio de Janeiro of Federated Republic of Brazil v. Philip Morris Inc.*, 239 F.3d 714, 715 (5th Cir. 2001); *see also* 28 U.S.C. § 1407; R.P.J.P.M.L.

3

2.1(d).

## IV. DISCUSSION

### A. Motion to Stay

The Court first addresses Transocean's motion for a stay. By its motion, Transocean asks the Court not to decide the issues placed before it as a result of Transocean's decision to remove St. Joe's lawsuit from Delaware Superior Court to this Court. Instead, Transocean argues that this Court should exercise its discretion to stay this action and allow the JPML to decide whether this action should be transferred into the MDL Action. If, as all parties assume, the JPML does transfer this action, St. Joe will be able to renew its motion to remand in the MDL Action, where it would be decided by the Honorable Carl J. Barbier of the Eastern District of Louisiana, who is presiding over MDL 2179.

St. Joe opposes a stay. In St. Joe's view, there is no federal jurisdiction to hear this action, a fact that would be as true in the Eastern District of Louisiana as it is in this Court. A stay would prejudice St. Joe by causing further delay in resolution of its motion to remand, requiring St. Joe to continue to litigate in a federal forum, which lacks jurisdiction and which is not the forum in which St. Joe chose to bring its action. St. Joe believes it will take far longer for Judge Barbier to rule on its motion to remand than it will take this Court, given that in this Court the motion is already fully briefed, argued, and submitted for decision.

In determining whether to grant a stay, the Court typically considers three factors: the potential prejudice to the non-moving party, any hardship and inequity to the moving party in the absence of a stay, and judicial economy. *See Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010). Here, the Court has determined that two of

4

these three factors, as well as the overall balance, weigh against granting a stay.

Considering the first factor, St. Joe would be unfairly prejudiced by the delay that would necessarily result from a stay. St. Joe's motion to vacate CTO 7 is scheduled to be submitted to the JPML for decision without oral argument on March 30, 2011 (i.e., just over two weeks from the date of issuance of this Opinion). Based on the parties' predictions, the Court assumes that, if this Court were to enter a stay, the JPML would fairly quickly deny St. Joe's motion and transfer this action to the MDL Action. Thus, the Court estimates that, if this case were stayed, St. Joe's lawsuit against Transocean would become part of the MDL Action by the middle of April. Then, under the procedures Judge Barbier has instituted, St. Joe would be able to refile its motion to remand. (*See* MDL 2179, Pretrial Order #5, D.I. 3 Ex. 3) Briefing on the motion would likely follow. Given these circumstances, the Court surmises that, if a stay were entered, St. Joe's motion to remand would not even be ready for decision in the MDL Action until approximately two months from now. By contrast, this Court is prepared to rule on St. Joe's motion – which has been pending here for more than three months – today.

Moreover, if St. Joe is correct (and this Court believes that it is), then this case is currently pending in a court lacking jurisdiction. This jurisdictional defect would not be cured by a transfer to the Eastern District of Louisiana. St. Joe has a right to proceed in a timely manner on its claim and to do so in a court having jurisdiction. Granting Transocean's requested stay would delay further the time at which this will finally occur.

Turning to the second factor, the Court recognizes that there is some hardship to Transocean as a result of the denial of the requested stay, but the Court does not perceive this hardship to be particularly great. Part of the prejudice Transocean cites is that it will have to

5

litigate issues arising from the BP oil spill in two courts – here (or the Delaware Superior Court) and the Eastern District of Louisiana, since Transocean is already a part of the MDL Action. This prejudice, however, results from actions brought by other plaintiffs – not St. Joe. Hence, this prejudice is attributable to Transocean's alleged role in the events relating to the oil spill, not to St. Joe's action or this Court's decision.

Transocean next points to the risk of inconsistent decisions: this Court might decide the remand motion differently than Judge Barbier will decide the same or similar motions as part of the MDL Action. There is, no doubt, some risk of inconsistency. Some of the issues presented by St. Joe's motion to remand are difficult and some are novel; it is also true that many of the relevant precedents are opinions issued by the Fifth Circuit, which will be binding on Judge Barbier but are not binding on this Court. The risk of inconsistent decisions, and the harm to Transocean that would result from them, are not, however, so great as to warrant a stay. Moreover, the risk of inconsistency is reduced here because this Court will treat the Fifth Circuit opinions as highly persuasive authority.

Transocean also raises concerns that if this action proceeds in Delaware Superior Court, Transocean will be unable to defend itself adequately, because it will have difficulty bringing third parties into the state court action, given that cases against these third parties are pending in the MDL Action. Because St. Joe seeks to impose joint and several liability, Transocean fears that it will be severely prejudiced if it cannot recover against joint tortfeasors. St. Joe has represented that it will cooperate in efforts by Transocean to address these concerns in the Superior Court. (Tr. 10-11) Additionally, the Court is confident that the judge to whom this case is assigned in Superior Court will be able to manage the state court proceedings in a manner that

protects all parties' rights.[2]

The third factor, judicial economy, weighs heavily against a stay. Transocean chose to remove this action to this Court in November 2010. After St. Joe filed its motion to remand, and Transocean filed its motion to stay, Transocean requested oral argument on both motions. The Court thereafter invested substantial time in studying the issues the parties have put before it, including by conducting a teleconference (to hear argument on and deny Transocean's emergency request for a continuance of the motions hearing) and to prepare for and preside at the motions hearing. It is equally evident that the parties were thoroughly prepared for the motions hearing, and their briefs plainly were the product of substantial investment of time and money. Simply put, this Court has done the work necessary to make an informed decision on the motion to remand and, under the circumstances, judicial economy is promoted by this Court going ahead and doing so. This is true even if, eventually, Judge Barbier reaches the identical issue presented by St. Joe's remand motion[3] and decides that precise issue contrary to how this Court does so – for, even then, Judge Barbier will have had the benefit of another court's view on the issue, a factor which, under the present circumstances, can contribute to judicial economy.

Accordingly, the Court will deny Transocean's motion to stay.

---

[2]Among other potential resolutions to this problem is that the Superior Court could exercise *its* discretion to stay this matter, given the pendency of the MDL Action. Transocean conceded at the hearing that such relief may be available. (Tr. 37) Also, Transocean might be able to implead Halliburton and M-I into the Superior Court action. Transocean has evidently begun to pursue such relief already. Transocean recently filed a third-party complaint against most of the defendants in the MDL Action, which was consolidated into the MDL Action. (D.I. 29 Ex. 3)

[3]There is no certainty that he will do so. There is a possibility that Judge Barbier will decide the Haliburton and M-I motions on other grounds and will not need to reach the issues that are presented by St. Joe's motion to remand in the instant action.

**B.      Motion to Remand**

### 1.      Removal Jurisdiction Pursuant to OPA

In its notice of removal, Transocean alleges that "this Court has federal question jurisdiction under the Oil Pollution Act ['OPA'] over claims alleged in the Complaint." (D.I. 1 at ¶ 6) But in the Complaint, St. Joe only raises claims based on Florida state law. Consequently, Transocean asserts that "OPA displaces claims pleaded by Plaintiff that seek recovery of damages that are recoverable exclusively under the OPA." (*Id.* at ¶ 7) St. Joe responds that, in making this assertion, Transocean raises a preemption defense; i.e., that OPA preempts the Florida tort claims which St. Joe actually asserts. (D.I. 6 at 6) Based on the well-pleaded complaint rule, St. Joe argues, a preemption defense cannot be the basis for removal. (*Id.* at 6-7) St. Joe further contends that OPA, through its state law saving clauses, explicitly avoids preempting state law claims for oil spill damages. (*Id.* at 9)

In its briefing, Transocean never directly addresses whether it raises a preemption defense. Instead, Transocean argues that, pursuant to Supreme Court precedent, St. Joe's claims invoke admiralty (or maritime) law, not Florida tort law. (D.I. 11 at 4) It is impossible to raise both state and admiralty claims, Transocean contends, because admiralty jurisdiction ousts state law. (*Id.*) Completing the argument, Transocean asserts that admiralty claims – which are federal common law claims – were displaced by OPA – the exclusive federal remedy for the types of damages alleged – and, therefore, St. Joe's claims are only cognizable under OPA (D.I. 11 at 9)

The Court must remand this case if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447©). "The statute is strictly

construed, requiring remand to state court if any doubt exists over whether removal was proper."

*Gross v. Deberardinis*, 722 F. Supp. 2d 532, 533 (D. Del. 2010) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)). Even assuming Transocean's arguments *may* (but also may not) ultimately be successful in a motion to dismiss the state law claims, if this Court is uncertain whether it can exercise removal jurisdiction, it must err on the side of remand. Now is not the time to determine the merits of Transocean's dismissal arguments. *See Hufnagel v. Omega Services Indus., Inc*, 182 F.3d 340, 345 (5th Cir 1999) ("[A] district court should not pre-try a case to determine its removal jurisdiction.").

The issue of removal jurisdiction must be "determined by reference to the well-pleaded complaint rule." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). That rule "provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.*, 605 F.2d 119, 122 (3d Cir.1979) ("[A] 'right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action' and . . . 'the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'") (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936)). Consequently, "the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 399. A federal defense, or the anticipation of such defense in the complaint, is irrelevant in the well-pleaded complaint analysis. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses."). "[A]

9

federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise . . . or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Bd. v. Constr. Laborers*, 463 U.S. 1, 10 (1983). No federal question is created by asserting that the state law on which a complaint is based has been preempted by federal law, i.e., a federal preemption defense. *See Beneficial Nat'l Bank*, 539 U.S. at 6 ("[A] defense that relies on . . . the pre-emptive effect of a federal statute . . . will not provide a basis for removal."). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

There is an exception to this rule known as the "complete preemption doctrine." In some situations, "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. . . . Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Despite Transocean's refusal to explicitly say so, its argument for federal question jurisdiction is premised on a preemption defense: that OPA preempts St. Joe's claims (either by directly preempting state tort claims or because admiralty law preempts state common law claims, and OPA, in turn, preempts admiralty claims). The well-pleaded complaint rule prohibits finding removal jurisdiction on this basis. Only if OPA "completely preempts" state tort claims

10

based on oil spill damage can Transocean's arguments be availing. The Court, however, finds the complete preemption doctrine inapplicable since OPA's saving clauses, which are examined in greater detail below, clearly contemplate a concurrent state legal regime, thereby depriving OPA of the "extraordinary preemptive force" necessary for the application of the complete preemption doctrine.

Were this not the case, and assuming, therefore, it is necessary to reach the merits of the "preemption" argument, the Court finds the argument unpersuasive. OPA contains extensive saving clauses. For instance, 33 U.S.C. § 2718(a), entitled "Preservation of State authorities," states:

> Nothing in this Act . . . shall –
>
> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to–
>
>> (A) the discharge of oil or other pollution by oil within such State; or
>>
>> (B) any removal activities in connection with such a discharge; or
>
> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law.

Section 2718(c), entitled "Additional requirements and liabilities; penalties," further states:

> Nothing in this Act . . . shall in any way affect, or be construed to affect, the authority of . . . any State or political subdivision thereof–

> (1) to impose additional liability or additional
> requirements; or
>
> (2) to impose, or to determine the amount of, any
> fine or penalty (whether criminal or civil in nature)
> for any violation of law;
>
> relating to the discharge, or substantial threat of a discharge, of oil.

Accordingly, St. Joe argues the case law is clear that "state law remedies for oil spill damages are not displaced by admiralty law" and courts "hold that OPA's explicit preservation of common law oil spill claims is confirmation that Congress did not intend for admiralty law to supplant such claims." (D.I. 12 at 5)

As shown above, OPA's § 2718(a)(1)(A) explicitly prevents preemption of state law liability for "*the discharge of oil or other pollution by oil*" (emphasis added), a proposition confirmed by the legislative history and judicial decisions. *See* S. Rep. No. 101-94 (1989), at *6 ("To date, Federal legislation has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal standards. . . . This legislation, as reported by the Committee, would permit such State laws to continue and would not preclude enactment of new State laws. The theory behind the Committee action is that the Federal statute is designed to provide basic protection for the environment and victims damaged by spills of oil. Any State wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so. On the other hand, a State might feel adequately protected by the Federal statute and therefore choose not to enact additional State law. In any event, the Committee chose not to impose, arbitrarily, the constraints of the Federal regime on the States while at the same time preempting their rights to their own

12

laws."); *U.S. v. Locke*, 529 U.S. 89, 106 (2000) ("We have upheld state laws imposing liability for pollution caused by oil spills. . . . Our view of OPA's saving clauses preserves this important role for the States."); *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F.3d 58, 65 (1st Cir. 2000) ("We have indeed acknowledged that Congress did not intend the OPA to bar the imposition of additional liability by the States."). St. Joe's Florida tort law claims are, therefore, not preempted.

Transocean argues that the saving provisions apply only to state claims for oil discharges within a state's territory, not discharges (like those involved here) occurring in federal waters. (D.I. 11 at 8) St. Joe refutes this, asserting that the saving clauses expressly authorize state claims for pollution by oil affecting a state regardless of where the discharge occurs. (D.I. 12 at 5) Transocean's interpretation of the saving provisions, in St. Joe's opinion, is a structurally illogical reading of the pertinent clause. (*Id.* at 6 n.23)

The Court agrees with St. Joe and rejects Transocean's narrow reading of the saving clauses. By specifying that States can impose additional liability for "other pollution by oil within such State" (§ 2718(a)(1)(A)), the statute contemplates penalization of more than merely discharges occurring within the state's territory. In support of its narrow reading of the clauses, Transocean cites a string of cases in which the discharge occurred within the state. (D.I. 11 at 8 n.9) Factually, it is true that in these cases, the spill occurred within the state. This, however, does not prove Transocean's point; none of these cases explicitly found the OPA saving clauses inapplicable to claims resulting from an injury felt within a state due to a spill outside of the state. In fact, courts have consistently recognized that sea-to-shore pollution is within the police power of the states. *See Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 343 (1973)

13

("[S]ea-to-shore pollution – historically within the reach of the police power of the States – is not silently taken away from the States by the Admiralty Extension Act, which does not purport to supply the exclusive remedy."); *Illinois v. City of Milwaukee*, 731 F.2d 403, 411 n.3 (7th Cir. 1984).

At oral argument, Transocean further attempted to limit the scope of these saving clauses, arguing that the first – § 2718(a)(1) – applies only to state statutory regimes, while the second – § 2718(a)(2) – is limited to State law (including common law) relating to waste disposal.[4] (Tr. 44-46) The Court disagrees. The first clause preserves "the authority of any State or political subdivision thereof" to impose "any additional liability or requirements with respect to" "the discharge of oil or other pollution by oil within such state; or . . . any removal activities in connection with such discharge." 33 U.S.C. § 2718(a)(1). This clause draws no distinction between a State exercising this authority via state common law or a state statutory regime. *See Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561, 565 (D. Md. 2000) ("OPA does not preempt state laws of a scope similar to the matters contained in Title I of OPA, such as the state common law actions pleaded here [negligence, trespass, strict liability, and nuisance].") (internal citations omitted). The second clause provides in pertinent part: "[n]othing in this Act . . . shall . . . affect or be construed to affect or modify in any way obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law." 33 U.S.C. § 2718(a)(2). This provision, therefore, makes clear that, in addition to the preservation of state authority to impose liability above and beyond OPA, any liability existing

---

[4]Transocean raised these arguments for the first time at oral argument. They appeared nowhere in Transocean's Opposition Brief. (*See* D.I. 11)

14

prior to OPA under State law, including common law, is not altered either.

Other courts addressing these issues have likewise declined to adopt narrow readings of OPA's saving clauses. *See Williams*, 115 F. Supp. 2d at 565; *see also Russo v. M/T Dubai Star*, 2010 WL 1753187, at *3 (N.D. Cal. Apr. 29, 2010) (ruling on motion to dismiss various causes of action and holding, as threshold matter, that "remainder of plaintiffs' causes of action," which included state tort and statutory claims, "arise not under OPA but under state law," since "OPA does not preempt state laws governing liability and compensation relating to oil spills, such as the claims alleged by plaintiff in this case"); *Isla Corp. v. Sundown Energy L.P*, 2007 WL 1240212, at *2 (E.D. La. Apr. 27, 2007) (stating, in context of motion to dismiss complaint asserting OPA and state law claims, "OPA does not preempt state law in the area of oil spill liability and compensation") (internal citations omitted); *see generally U.S. v. Locke*, 529 U.S. at 106 ("We have upheld state laws imposing liability for pollution caused by oil spills. *Askew v. American Waterways Operators, Inc.*, 411 U.S. at 325, 93 S.Ct. 1590. Our view of OPA's saving clauses preserves this important role for the States, which is unchallenged here.").[5]

Transocean also argues that St. Joe's claims invoke admiralty jurisdiction, because an oil spill is a maritime tort under the test outlined by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). (D.I. 11 at 5) According to Transocean, admiralty jurisdiction applies by virtue of the Admiralty Extension Act, 46 U.S.C. § 30101. Transocean asserts that its position is not affected by St. Joe's status as a land-based claimant or

---

[5]This Court does not reach the question of whether the OPA saving clauses' coverage of state law common law claims "was effectively put to rest in *U.S. v. Locke*," as *Williams* concluded. 115 F. Supp. 2d at 564. It is enough here to conclude that, even if this is an open question, this Court's decision is consistent with *Locke*.

St. Joe's alleged shoreside damages. (*Id.* at 6)

St. Joe does not contest that, under the facts at hand, admiralty jurisdiction would be proper, i.e., the *Grubart* test is satisfied. St. Joe also recognizes that the Admiralty Extension Act extends maritime jurisdiction to cover sea-to-shore transactions. (*See* Tr. 21) St. Joe argues, however, that pre-OPA, the Admiralty Extension Act did not preclude concurrent state law claims for sea-to-shore pollution; OPA has since trumped the Admiralty Extension Act with regards to oil pollution liability; and OPA explicitly allows concurrent state law claims regarding liability. (D.I. 6 at 7-9; Tr. 21-22)[6]

The Court agrees with St. Joe. In *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 328 (1973), a pre-OPA opinion, the Supreme Court held that a Florida statutory scheme regarding oil spill damages was not preempted by federal law. The Court explained:

> One can read the history of the Admiralty Extension Act without finding any clear indication that Congress intended that sea-to-shore injuries be exclusively triable in the federal courts. . . .
>
> [S]ea-to-shore pollution – historically within the reach of the police power of the States – is not silently taken away from the States by the Admiralty Extension Act, which does not purport to supply the exclusive remedy. . . .
>
> . . . . But we decline to . . . oust state law from any situation involving shoreside injuries by ships on navigable waters. The Admiralty Extension Act does not pre-empt state law in those situations.

*Id.* at 341-44. *Askew* makes clear that, prior to OPA, state law was applicable to sea-to-shore

---

[6]St. Joe also maintains that removal is improper even if its claims sound in admiralty law because admiralty claims may not be removed from state court. (D.I. 12 at 4)

pollution. OPA's saving clauses preserve this conclusion even following enactment of OPA. Nothing in *Grubart*,[7] or the other authorities on which Transocean relies, precludes this conclusion.

Finally, during oral argument, Transocean articulated for the first time that its position is based not on preemption but, rather, on a "conflict of laws analysis."[8] (*See* Tr. 41-47) For this contention, Transocean relies on *In re the Exxon Valdez*, 767 F. Supp. 1509 (D. Alaska 1991), and *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), for the proposition that, although fashioned as Florida common law claims, St. Joe's claims are controlled by general maritime law under a conflicts analysis. (Tr. 42) Thus, in Transocean's new formulation, it was not OPA that preempted St. Joe's state law claims but, rather, even pre-OPA, St. Joe lacked these remedies "by virtue of the application of general maritime law principles." (Tr. 46) Notwithstanding Transocean's characterization, the Court views this as, again, a federal preemption argument, which, under the well-pleaded complaint rule, cannot create the basis for removal jurisdiction. Moreover, neither *Exxon Valdez* nor *Testbank* involved a motion to remand or examined removal jurisdiction or the well-pleaded complaint rule, and the complaints in both cases asserted maritime claims.[9] Transocean's contentions are more appropriately brought in a

---

[7]Also, *Grubart* is distinguishable, as it only involved maritime claims, and did not address concurrent state law claims or whether those claims are cognizable despite the Admiralty Extension Act.

[8]The term "conflict of laws" appears nowhere in Transocean's Opposition Brief. (*See* D.I. 11)

[9]*Exxon Valdez* resolved a motion for judgment on the pleadings, 767 F. Supp. at 1511, and involved complaints alleging "the maritime torts of unseaworthiness and maritime negligence" and "maritime liability," *id.* at 1513. *Testbank* was an en banc review of a district court grant of summary judgment to defendants on claims "including maritime tort, private

17

motion to dismiss, not in opposition to a motion to remand.[10]

In sum, the Court finds that Transocean raises a federal preemption defense as its basis for removal jurisdiction, regardless of how Transocean characterizes the argument. The well-pleaded complaint rule precludes basing removal jurisdiction on this defense. Even if the Court reaches the merits of the preemption argument, the Court finds it unpersuasive. OPA, through its saving clauses, preserves the state law claims which St. Joe asserts, and such claims were recognized prior to OPA. Thus, the Court rejects Transocean's contention that it has federal question jurisdiction under OPA.

### 2. Removal Jurisdiction Pursuant To OCSLA

In the alternative, Transocean argues that removal jurisdiction is appropriately based on the Outer Continental Shelf Lands Act, known as "OCSLA." 43 U.S.C. § 1331 et seq. The Court disagrees.

As an initial matter, there is substantial tension between Transocean's argument for removal jurisdiction pursuant to OPA and its argument under OCSLA. In making its OPA-based argument, Transocean emphasizes that OPA "provides a comprehensive statutory framework" for oil spill injuries, "represents Congress' attempt to provide a comprehensive framework in the area of maritime oil pollution," and is the "sole federal law applicable in this area of maritime

---

actions pursuant to various sections of the Rivers & Harbors Appropriation Act of 1899 and rights of action under Louisiana law." 752 F.2d at 1021.

[10]In fact, the very same argument Transocean presses here is also the subject of a motion to dismiss which Transocean recently filed in the MDL Action. (D.I. 29 Ex. 2) Although a single footnote appearing in the motion to dismiss characterizes the argument as based on choice of law principles, the body of Transocean's dismissal brief repeatedly refers to it as a preemption argument. (*Id.*)

pollution." (D.I. at 9) When it comes to OCSLA, however, Transocean then argues in the alternative that, despite the comprehensive nature of OPA, removal jurisdiction can be based on OCSLA. That is, Transocean initially argues that OPA, because of its comprehensive nature, trumps OCSLA in regard to oil spills, but then turns sharply and attempts to base removal jurisdiction on OCSLA. The Court concludes that Transocean's initial argument, that OPA is the "sole federal law applicable in this area of maritime pollution," is correct.

That said, courts in the Fifth Circuit have held that, when original jurisdiction is available pursuant to § 1349 of OCSLA, the well-pleaded complaint rule is inapplicable. *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir 1998) ("In determining federal court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule . . . because § 23 of OCSLA expressly invests jurisdiction in the United States District Courts."); *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2010 WL 3943451, at *3 (E.D. La. Oct. 6, 2010) (hereinafter "*MDL Op.*") ("[A]lthough Plaintiff is correct in arguing that the well-pleaded complaint rule prevents Defendants from removing this matter on the basis of 28 U.S.C. § 1331, there is nothing preventing Defendants from removing this matter based on an assertion of jurisdiction under 43 U.S.C. § 1349. Therefore, if this Court finds that jurisdiction exists pursuant to 43 U.S.C. § 1349, Plaintiff is incorrect in arguing that the well-pleaded complaint rule serves as a bar to removal."); *White v. Chevron, U.S.A., Inc.*, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990) ("Although in this case, the plaintiffs did not plead OCSLA in their state court petition but only alleged state causes of action, the statute and the jurisprudence clearly demonstrate that because this action arose on the outer continental shelf, the plaintiffs' exclusive remedy is pursuant to OCSLA. A plaintiff cannot defeat removal by

19

'artfully' omitting essential federal issues from a state court petition. . . . If the state causes of action alleged in the complaint are applicable to this case, it is only because state law has been adopted as surrogate federal law through OCSLA. Therefore, the fact that plaintiffs' state court petition failed to specifically invoke OCSLA does not defeat [defendant's] right under 28 U.S.C. § 1441(a) to remove this case to federal court."). The Court treats this as persuasive authority and, therefore, will turn to the substance of Transocean's OCSLA argument.

Transocean argues that federal jurisdiction exists, in its own right, from the grant of original jurisdiction to district courts in § 1349 of OCSLA for cases and controversies arising out of operations conducted on the Outer Continental Shelf. (D.I. 1 at ¶ 9) Alternatively, Transocean argues that removal is proper pursuant to 28 U.S.C. § 1331 federal question jurisdiction because St. Joe's claims arise under OCSLA.

St. Joe responds that OCSLA's grant of original jurisdiction creates no removal jurisdiction because OCSLA does not grant federal courts exclusive jurisdiction over claims arising on the Outer Continental Shelf. (D.I. 6 at 16-17) While the federal government has sovereignty on the Outer Continental Shelf, states still have the power to adjudicate claims arising from activities there; i.e., states have concurrent jurisdiction. (*Id.* at 17) Finally, St. Joe contends that OCSLA creates no federal question jurisdiction because courts require a separate basis for federal jurisdiction independent of OCSLA to allow for removal.

Section 1349(b)(1) of OCSLA grants district courts jurisdiction in controversies arising out of activity on the Outer Continental Shelf:

(b) Jurisdiction and venue of actions

> (1) Except as provided in subsection (c) of this
> section, the district courts of the United States shall
> have jurisdiction of cases and controversies arising
> out of, or in connection with (A) any operation
> conducted on the outer Continental Shelf which
> involves exploration, development, or production of
> the minerals, of the subsoil and seabed of the outer
> Continental Shelf, or which involves rights to such
> minerals, or (B) the cancellation, suspension, or
> termination of a lease or permit under this
> subchapter. Proceedings with respect to any such
> case or controversy may be instituted in the judicial
> district in which any defendant resides or may be
> found, or in the judicial district of the State nearest
> the place the cause of action arose.

This is a broad grant of jurisdiction. *See, e.g., Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87

F.3d 150, 154 (5th Cir. 1996). But, in analyzing this provision, the Supreme Court has stated

that "the mere grant of jurisdiction to a federal court does not operate to oust a state court from

concurrent jurisdiction over the cause of action." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 US

473, 479 (1981). The Supreme Court noted that in 43 U.S.C. § 1333(a)(1), "OCSLA declares the

Outer Continental shelf to be an area of 'exclusive federal jurisdiction,'" but this provision grants

only exclusive political jurisdiction, not exclusive judicial jurisdiction. *Id.* at 479-80. It follows

that state courts are not prohibited from hearing controversies falling within OCSLA jurisdiction.

The Fifth Circuit has had occasion to explore the relationship between OCSLA and

removal jurisdiction. In *Tennessee Gas*, 87 F.3d at 155, the Fifth Circuit recognized that,

arguably, OCSLA is insufficient to create "arising under" jurisdiction pursuant to the first

sentence of 28 U.S.C. § 1441(b) for **general maritime claims** because maritime claims do not

21

arise under federal law. But a finding of "arising under" jurisdiction was unnecessary in that case because no forum defendant was involved. The court avoided the "conundrum" of deciding whether "arising under" jurisdiction existed under OCSLA because "removal [wa]s consistent with the second sentence of § 1441(b), if not the first." *Id.* at 156.

A later Fifth Circuit case, *Hufnagel v. Omega Services Industries, Inc*, 182 F.3d 340, 351 (5th Cir. 1999), found federal question jurisdiction arising under OCSLA for a complaint based on Louisiana law because, under OCSLA's state-law borrowing provision, the Louisiana statute was the applicable federal law under which plaintiff's claims arose. The court found the plaintiff's claims were "nonmaritime ones 'arising under' and governed by OCSLA. Accordingly, the case [could] be removed without regard to the citizenship of the parties." *Id.* at 352. *Hufnagel* did not address whether "arising under" jurisdiction is present when both OCSLA and maritime jurisdiction exists.

Here, original jurisdiction exists under OCSLA. *See MDL Op.*, 2010 WL 3943451, at *3 ("[I]t is clear that original jurisdiction rests with this Court pursuant to § 1349(b)(1)."); *Phillips v. BP PLC*, 2010 WL 3257737, at *1 (N.D. Fla. Aug. 17, 2010) ("As a matter of plain English, § 1349(b)(1) provides federal jurisdiction over the plaintiff's claim, because the claim arises out of, and is connected with, the *Deepwater Horizon*'s oil-related operations on the continental shelf."). St. Joe admits the facts necessary to find OCSLA jurisdiction; there is no real dispute on this issue. St. Joe emphasizes, however, that to the extent the Court construes its claims as maritime claims (even though St. Joe does not purport to be pressing maritime claims), these claims do not "arise under" federal law, and removal jurisdiction remains improper.

In the alternative, if St. Joe's claims are viewed as non-maritime, the analysis is more

22

complicated, but the Court still finds no "arising under" federal jurisdiction. Under *Hufnagel*,

removal jurisdiction arguably can be premised on federal question jurisdiction pursuant to the

first sentence of 28 U.S.C. § 1441(b) for a non-maritime claim. *See Hufnagel*, 182 F.3d at 351

("Such claim is one 'arising under' OCSLA within the meaning of section 1441(b) and section

1331 and hence is not subject to section 1441(b)'s restriction to cases in which no defendant is a

citizen of the state of suit."). Even though the plaintiff in *Hufnagel* asserted no OCSLA claim in

his complaint, the Fifth Circuit read his complaint as raising an OCSLA claim. *Id.* at 349

("Hufnagel's petition does not plead OCSLA *eo nomine*."). After recognizing that "OCSLA

does not necessarily transform maritime claims falling within its jurisdictional grant into claims

arising under federal law," *id.* at 350, the Fifth Circuit stated:

> [W]e conclude as a matter of law that Hufnagel has asserted
> against Kerr-McGee a non-maritime claim, a claim governed not
> by maritime law but by La. Civil Code § 2322, which is made
> applicable federal law by OCSLA, 43 U.S.C. § 1333(a)(2)(A). . . .
> Such claim is one "arising under" OCSLA within the meaning of
> section 1441(b) and section 1331 and hence is not subject to
> section 1441(b)'s restriction to cases in which no defendant is a
> citizen of the state of suit.

*Id.* at 351.

The present case is distinguishable from *Hufnagel*. St. Joe raises claims under Florida

law, but Florida law is not the applicable federal law pursuant to OCSLA's borrowing provision

– i.e., it is not made "surrogate federal law." In *Hufnagel*, the state law (Louisiana) under which

the claims were brought was the applicable federal law under OCSLA and, therefore, it made

sense to read a complaint based on this state law as asserting federal claims. Here, the parties

agree that the pertinent federal law is OPA, not Florida law nor the law of the adjacent state (presumably Louisiana). Therefore, unlike the situation in *Hufnagel*, there is no basis here for reading St. Joe's complaint as raising OCSLA claims. St. Joe's causes of action do not "arise under" OCSLA for purposes of removal.[11]

Having decided there is no "arising under" jurisdiction, the Court must decide whether the second sentence of 28 U.S.C. § 1441(b), the so-called "forum defendant rule," applies. Section 1441(b) states (with emphasis added):

> Any civil action of which the district courts have original jurisdiction founded on a claim or right *arising under* the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action* shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Under the plain language of this statute, the second sentence applies here, since there is no "arising under" jurisdiction.

The parties are in agreement that no court has determined whether an action can be removed based on OCSLA's jurisdictional grant despite the presence of forum defendants. (*See, e.g.*, Tr. 50-51) That is, the applicability of the second sentence of § 1441(b) in OCSLA cases based on maritime law is an open question.[12] In at least two cases, the Fifth Circuit recognized

---

[11]For this reason, *White v. Chevron,* 1990 WL 28167 (E.D. La. Mar. 14, 1990), is distinguishable also. *See id.* at *1 ("If the state causes of action alleged in the complaint are applicable to this case, it is only because state law has been adopted as surrogate federal law through OCSLA.").

[12]Judge Barbier appears to agree. *See MDL Op.*, 2010 WL 3943451, at *4 ("It is well settled that maritime law claims do not arise under the laws of the United States. . . . It is

24

the issue, but did not decide it. In *Hufnagel*, the Fifth Circuit implied that the forum defendant

rule would preclude removal. *See* 182 F.3d at 350 ("Where a claim within OCSLA's grants of

original federal court jurisdiction is nevertheless governed by maritime law, it arguably does not

provide removal jurisdiction ***unless*** no defendant is a citizen of the state of suit, notwithstanding

that it would fall within the federal District Court's original jurisdiction under OCSLA.")

(emphasis added). Earlier, in *Tennessee Gas*, the Fifth Circuit had been more ambivalent,

although it certainly did not endorse the position advocated here by Transocean. *See* 87 F.3d at

156 ("In our case . . . removal is consistent with the second sentence of § 1441(b) – HCC is a

citizen of the state of Texas, but suit was brought in Louisiana. We recognize that it may be a

distortion of the legal scheme to decide this case on the citizenship of HCC. Given the national

interests that prompted Congress to pass OCSLA and grant broad jurisdiction under 43 U.S.C.

§ 1349, Congress arguably intended to vest the federal courts with the power to hear any case

involving the OCS, even on removal, without regard to citizenship . . . . Perhaps congressional

intent under OCSLA may have supported removal under the first sentence of § 1441(b), though

the language of that sentence might not carry the intent; while the language of the second

sentence supports removal, though the purpose of the sentence (diversity) is arguably irrelevant

to our case. We need not resolve this conundrum, however, for removal is consistent with the

second sentence of § 1441(b), if not the first.").

At bottom, the Fifth Circuit noted that applying the forum defendant rule to OCSLA cases

---

therefore true that unless a defendant is not a citizen of the state in which the action was brought,
§ 1441(b) does not allow maritime law claims to be removed to federal court. This is true even if
the court has both OCSLA and admiralty jurisdiction because the Fifth Circuit has not
determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a
plaintiff's claim arises under the laws of the United States.").

may be counterintuitive. Yet, at the same time, the Fifth Circuit recognized that *perhaps* congressional intent under OCSLA would support removal despite the presence of a forum defendant, but the language of § 1441(b) does not.[13] Hence, the Court concludes that, even if it were bound to follow Fifth Circuit precedent, no Fifth Circuit authority compels the conclusion that the forum defendant rule does not apply here. Thus, again, the Court applies the plain and unambiguous language of § 1441(b), which, here, precludes removal to federal court due to the presence of a forum defendant.

Transocean argues that the forum defendant rule is inapplicable because it is limited to removal cases based on diversity jurisdiction. (D.I. 11 at 20) But this discounts the explicit language of the statute, and Transocean cites no authority for such a limitation.[14] The Court rejects Transocean's implicit invitation to ignore the clear statutory language of § 1441(b).

Accordingly, since three of the four Defendants in this action are citizens of Delaware, removal was improper under the second sentence of § 1441(b). *See Belcufine v. Aloe*, 112 F.3d 633, 637-38 (3d Cir. 1997) (resolving issue on other grounds, but noting that "[t]he . . .

---

[13]In *Phillips v. BP PLC*, 2010 WL 3257737, at *1 (N.D. Fla. Aug. 17, 2010), the Northern District of Florida denied a motion to remand an action brought by a Florida plaintiff against BP for shoreside injuries following the BP oil spill, as the court found it had subject matter jurisdiction pursuant to OCSLA. The decision makes no mention of the citizenship of the parties nor the applicability of the forum defendant rule, therefore, leaving the issue raised in the present action unresolved. No party to this action contends that *Phillips* addressed the forum defendant issue.

[14]Transocean cites an excerpt from *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 391 (5th Cir. 2009), in which the Fifth Circuit stated that "removal based on diversity jurisdiction is permitted only if 'none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is bought.'" This is wholly consistent with the second sentence of § 1441(b), since an action in which jurisdiction is based on diversity is "[a]ny other such action." But this statement does not imply the forum defendant rule is thereby inapplicable to actions based on other grants of jurisdiction – those cases are also "[a]ny other such action."

defendants . . . do not contend that they are citizens of a state other than the one in which the action was brought. . . . Accordingly, if 28 U.S.C. § 1441(b) applies to this case . . . removal was proper only if the action is one that 'arises under' federal law within the meaning of that provision."); *Korea Exch. Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 48 (3d Cir. 1995) ("[A]ctions not involving federal questions shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.") (internal quotations omitted).

Finally, Transocean argues that this Court should refrain from applying the forum defendant rule because, in Transocean's view, St. Joe waived its ability to seek application of the rule by failing to raise it in its opening brief in support of its motion to remand. The Court disagrees.[15] Transocean's waiver argument is predicated on the Third Circuit's decision in *Korea Exchange*, 66 F.3d at 50-51. *Korea Exchange* is distinguishable as there, unlike here, the plaintiff failed to file a timely motion to remand. *See id.* at 47. There, the district court had issued an order summarily remanding the case *sua sponte*. *See id.* On a petition for mandamus, the Third Circuit held that the error when a forum defendant removes a diversity case is a "defect in removal procedure" since the case could have originally been filed in federal court (i.e., a federal court would have subject matter jurisdiction because of complete diversity and an adequate amount in controversy). *See id.* at 50. This procedural defect is waived if not "the subject of a motion to remand within 30 days after filing the notice of removal." *Id.* at 51. Therefore, the Third Circuit found that the district court had no statutory authority to issue the

---

[15]It is worth noting that Transocean did not mention waiver until the February 8, 2011 teleconference on Transocean's emergency motion for continuance, fully 40 days after briefing on the motion to remand closed.

remand order after the 30-day period. *See id.* Even if *Korea Exchange* were not distinguishable, the portion of it on which Transocean relies is dicta. *See Foulke v. Dugan*, 148 F. Supp. 2d 552, 555 (E.D. Pa. 2001) ("Although the Third Circuit has ruled in actions in which plaintiffs waived the procedural defect by not filing a timely motion to remand, the Circuit has not addressed its position on remanding actions in which a timely motion to remand failed to articulate the proper procedural defect in removal.").

While St. Joe did not explicitly present its forum defendant argument in its motion to remand or its opening brief in support of its motion to remand, St. Joe did cite § 1441(b) and did argue that removal was improper under it. (*See* D.I. 6 at 4) Additionally, St. Joe's opening brief contained numerous other references that should have – and, the Court believes, did – give Transocean ample notice of the pertinence of the forum defendant issue. (*See id.* at 2-3, 16, 17-18, n.68) Also, on pages 2-3 and footnote 58 of its opening brief, St. Joe clearly stated that three of the four Defendants are forum citizens. (*See id.*) Most revealingly, Transocean's answering brief contained an entire section entitled "The 'Forum Defendant' Rule Does Not Apply To Transocean's Removals." (D.I. 11 at 19-20) Under these circumstances, the Court concludes that St. Joe did raise the forum defendant rule defect in Transocean's argument for removal jurisdiction as part of a timely motion to remand. *See Miller v. Riddle Memorial Hosp.*, 1998 WL 272167, at *8 (E.D. Pa. May 28, 1998) ("In this case, the Defendant does not argue and this Court does not find that Plaintiff's Motion to Remand was untimely. . . . In that Motion, Plaintiff specifically contested the removability of this case based on 28 U.S.C.A § 1441(b). Thus, Plaintiff's objection was timely under § 1447(c) and the 'defect in removal procedure' was not waived.").

## V.     CONCLUSION

For the reasons stated above, the Court will DENY Transocean's Motion to Stay

Proceedings Pending the MDL Panel's Transfer Ruling (D.I. 3) and GRANT St. Joe's Motion to

Remand (D.I. 5).